

FILED

September 24, 2018

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

3:48 P.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **HELGA BURKS,** | ) | **Docket No. 2016-08-0174** |
| **Employee,** | ) | |
| **v.** | ) | |
| **FRED'S, INC.,** | ) | **State File No. 96881-2014** |
| **Employer,** | ) | |
| **And** | ) | |
| **SAFETY NATIONAL CAS. CORP.,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

The Court held an expedited hearing on August 30, 2018, on Ms. Burks' request for medical and temporary disability benefits for a mental injury. Fred's denied that her mental injury arose primarily out of her work injury. For the reasons below, the Court holds Ms. Burks came forward with sufficient evidence to prove she is likely to prevail in her request for medical benefits.

### History of Claim

Ms. Burks worked for Fred's as a pharmacy technician. On December 10, 2014, a tall metal pallet fell on her, striking her head, right shoulder, and back. The parties introduced video of the accident, which showed Ms. Burks after the impact, leaning against a trash bin and holding her head. Minutes later, she collapsed to the floor, and two coworkers helped her sit. She sat for a few minutes and then walked out of the warehouse.

Fred's authorized medical treatment with BaptistOne Hospital emergency room, Concentra, and Dr. Allen Nadel. Ms. Burks sought additional unauthorized treatment from Delta Medical Center, St. Francis Hospital, Dr. Ushma Swamy, and Dr. Tejinder Saini. The parties introduced the following medical proof.

*Authorized treatment*

1

Fred's authorized treatment at the emergency room that day. She described right-sided head pain, a headache, and dizziness. Ms. Burks' CT scan of her head indicated no acute intracranial abnormality. The provider diagnosed a head injury and instructed Ms. Burks to follow-up the next day with her primary care physician.

The next day, Ms. Burks selected Concentra from a panel of physicians and saw Dr. John Goodfred. She reported losing consciousness from the injury, and complained of a headache, dizziness, blurred vision, unsteady gait, and "not feeling like herself." Dr. Goodfred noted soft-tissue swelling on the right side of her head. He diagnosed a scalp contusion and post-concussion syndrome, and he restricted Ms. Burks from work.

Four days later, Ms. Burks, accompanied by her husband, Michael Walton, returned to Concentra and saw Dr. Tracye Kyles. She complained of worsening vision, dizziness, nausea, and vomiting. Her husband reported personality changes and stated she mentioned suicide two days earlier. Dr. Kyles noted Ms. Burks was "very emotional while talking," although she denied current suicide ideation. Dr. Kyles instructed her to go the emergency room due to her reported personality changes.

Ms. Burks returned to Concentra two more times. On her last visit, she saw Dr. Goodfred and reported constant headaches, parasthesias, weakness, dizziness/vertigo, and light sensitivity. She also complained of mood swings, short temper episodes, and insomnia. Dr. Goodfred noted she was tearful with a flat affect and mood. She had "difficulty forming sentences as she appear[ed] to not be able to find the correct words." Dr. Goodfred referred her to a neurologist "ASAP." He further instructed Ms. Burks to follow up with her primary care physician to assess her "mood/personality disorder."

Based on Concentra's neurology referral, Fred's authorized an appointment with Dr. Alan Nadel. Ms. Burks and her husband attended the appointment, along with a case manager. Dr. Nadel noted complaints of headaches, neck pain, left shoulder pain, back pain, generalized musculoskeletal pain, memory difficulty and depression as a result of her work injury. He noted her history of injury, stating, "she was at work and a shelf fell, striking her over the left shoulder." She gave a history that she was unconscious for an unknown amount of time and then went to the emergency room. Dr. Nadel noted that Ms. Burks was "disheveled" and stated,

> She was wearing sunglasses and [was] very withdrawn in the office. She really wouldn't give much history but tended to mumble. I got most of the history from her husband, although she did give some information[.] . . . She continued to mumble and wouldn't talk clearly and this was evidently "one of her problems."

Dr. Nadel watched the video. He noted that it showed the shelf fell over her right shoulder and not her left. He stated,

2

[S]he did not fall to the ground and did not pass out at the immediate moment. She stood by the garbage bin for about a minute while coworkers were helping her and rubbing her neck. Then she just collapsed to the floor. They helped her up and sat her down on a rolling cart. She was able to walk with help and moved her legs quite well with the help of her co-workers. By ten minutes into the video . . . she got up and walked around the room fine. She had no evidence of any weakness.

After viewing the video, Dr. Nadel commented that, "[a]ll of this demonstrates a considerable inconsistency about her alleged head injury with the fall and the subsequent problems." He concluded,

I am not finding anything objective on this woman's exam and I really think I am seeing a lot of malingering and embellishment. If anything, [the] shelf hit her on the right shoulder and not the left and yet all of her complaints are on the left. There was no loss of consciousness, although she said she lost consciousness and doesn't remember going to the hospital.

Nevertheless, Dr. Nadel ordered an EMG/NCS of the left upper and lower extremities as well as MRIs of her cervical and lumbar spine. He also restricted Ms. Burks from work.

Dr. Nadel additionally documented that while he was out of the exam room, he heard shouting and, "the patient evidently threatened the case manager for some unknown reason." He stated Ms. Burks "then told me that she was depressed, has had suicidal ideation and needed help." Dr. Nadel urged her to go to the emergency room. He stated that he did not see any neurologic abnormalities. He advised she needed psychiatric evaluation and when she was stable, she could return for other studies to be sure there was no neurologic problem. Dr. Nadel stated Ms. Burks expressed no hostility towards him or his staff; however, because of the incident with the case manager, he declined to see her again or to respond to subsequent correspondence from Fred's regarding Ms. Burks' treatment.

Fred's authorized no further treatment following Dr. Nadel's visit. On July 15, 2015, it filed a Notice of Controversy and ceased payment of temporary disability benefits.

*Unauthorized treatment*

While Ms. Burks treated at Concentra and saw Dr. Nadel, she also sought unauthorized treatment at Delta Medical Center on six occasions for her headaches, vomiting, neck, back, and shoulder pain and symptoms of irritability. Ms. Burks testified that she followed the doctors' instructions and went to Delta whenever her workers' compensation physician instructed her to follow up with a personal physician.

3

After she left Dr. Nadel, Ms. Burks sought immediate emergency treatment at St. Francis Hospital for depression with suicidal ideation and back pain, which she associated with her work injury. The providers admitted her for five days of inpatient treatment.

Upon discharge, Ms. Burks underwent therapy for depression and post-traumatic stress disorder and was later referred to Healthquest for outpatient therapy and medical management. Ms. Burks began treatment with therapists and a psychiatrist, Dr. Tejinder Saini, in March 2015 and continues under Dr. Saini's care. At the hearing, Ms. Burks introduced a letter from Dr. Saini, who stated,

> The patient has been treated at Healthquest since March 23, 2015, for a diagnosis of Post Traumatic Stress Disorder. She was diagnosed with PTSD as the result of trauma she sustained at work. Ms. Burks has no history of psychiatric treatment or disorder prior to her on the job injury. As the result of her injury, she continues to experience severe emotional distress that has required psychiatric hospitalization, intensive outpatient therapy, and medication therapy.

*Testimony*

Ms. Burks denied severe headaches or psychological issues before her injury at Fred's. She described immediate head and back pain and feeling sick to her stomach after she was struck. She testified she could hear coworkers talking to her but could not understand what they said. She stated she passed out and had difficulty recalling the events afterwards. Ms. Burks did not remember driving herself to the emergency room that day. She only recalled calling her husband from a convenience store close to her home to pick her up because she was lost.

After the accident, Ms. Burks stated she began having "weird thoughts." She continued experiencing headaches, began having nightmares, and displayed violent outbursts toward her family. Ms. Burks expressed remorse for her outburst at Dr. Nadel's office, but she stated she needed help and felt provoked by the case manager.

Ms. Burks stated her shoulder, back, and leg symptoms have resolved and require no additional treatment. Dr. Saini's treatment and medication helped. She no longer suffers from vomiting, and her headaches are less severe. She no longer has suicidal thoughts. On cross-examination, Fred's counsel questioned her about reporting that she lost consciousness following the accident. She stated she still believed she did when she "passed out."

Mr. Walton testified that, on the day of the injury, he picked her up from the convenience store, and she looked confused and had a "big knot on her head." He learned

4

of her emergency room visit from paperwork he found in her car. He stated she had no memory of going to the hospital. Mr. Walton did not believe she was initially getting the help she needed and was concerned about her violent behavior.

Mr. Walton testified consistently with his wife regarding the incident in Dr. Nadel's office. He confirmed Ms. Burks improved under Dr. Saini's care.

Ms. Burks requested medical treatment for her mental injury with Dr. Saini and temporary disability benefits.[1]

## Findings of Fact and Conclusions of Law

At an expedited hearing, Ms. Burks must present sufficient evidence that she is likely to prevail at a hearing on the merits of her claim. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Analysis*

Fred's did not dispute that Ms. Burks sustained a work injury on December 10, 2014. It accepted Ms. Burks' claim for physical injuries and provided authorized treatment until Dr. Nadel refused to continue to treat her. Based on Dr. Nadel's opinion that he could not find any neurological abnormalities, Fred's argued it provided Ms. Burks with all the benefits to which she was entitled. Regarding her mental injury, Fred's disputed causation, contending Dr. Nadel did not specifically refer Ms. Burks for psychiatric evaluation "under workers' compensation."

To establish causation, Ms. Burks must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). A "reasonable degree of medical certainty" means that "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Thus, causation must be established by expert medical testimony.

Here, Ms. Burks' testimony was uncontroverted that she had no psychiatric issues before the metal pallet struck her head. After, she experienced severe headaches, dizziness, personality/mood changes, and depression. Mr. Walton's testimony and,

---

[1] At the close of evidence, Ms. Burks moved for a directed verdict contending Fred's had no proof to refute her testimony. Fred's contended the medical records introduced into evidence refuted her claim. A motion for directed verdict under Rule 50 of the Tennessee Rules of Civil Procedure applies only in jury trials. As this is a non-jury interlocutory hearing where Ms. Burks has the burden of proving she is likely to prevail at a hearing on the merits in establishing entitlement to benefits, the Court denies the motion.

significantly, the medical records corroborate Ms. Burks' testimony regarding the onset of her psychiatric symptoms. The Court notes within five days of the injury, Dr. Kyles noted Mr. Walton's report of Ms. Burks' "personality changes and mention of suicide two days ago." Concentra's records consistently noted that Ms. Burks was "very emotional while talking," "tearful . . . in some pain," "experiencing mood swings and short temper episodes," and demonstrated a "flat mood and affect-difficulty forming sentences." Given her symptoms, Concentra eventually referred Ms. Burks to Dr. Nadel.

Ms. Burks told Dr. Nadel that she was depressed, considering suicide, and needed help. He instructed her to seek immediate emergency help and stated she needed a psychiatric evaluation.

Fred's discounted Dr. Nadel's referral for a psychiatric evaluation because he did not explicitly state in his record that the referral was under workers' compensation and because he found nothing objective on exam and believed she was malingering. The Court is not persuaded. First, Dr. Nadel's statements were noted in his record immediately after his physical/neurological exam showed inconsistencies, and his review of the video showed the pallet did not hit her left shoulder. He had not yet discussed Ms. Burks' depression or recommended a psychiatric evaluation. Second, Dr. Nadel's summary of the video differs from the Court's observations, in that he failed to mention that the pallet first struck Ms. Burks' head. There was also no indication that he reviewed her previous medical records that documented her consistent psychiatric complaints. Finally, the Court finds Dr. Nadel never indicated Ms. Burks' psychiatric condition was not related to her work injury. He believed she needed a psychiatric evaluation, and when she was stable, he would perform studies to be sure there was not a neurologic problem.

Importantly, the only causation opinion in the record supports Ms. Burks' claim. Dr. Saini concluded "[s]he was diagnosed with PTSD as a result of a trauma she sustained at work. Ms. Burks has no history of psychiatric treatment or disorder prior to her on the job injury. As the result of her injury, she continues to experience severe emotional distress[.]" Fred's presented no proof refuting causation for Ms. Burks' mental injury.

Based on the foregoing, the Court holds Ms. Burks came forward with sufficient evidence to demonstrate she is likely to prevail at trial in establishing entitlement to medical benefits for her mental injury. Fred's argued that if the Court ordered medical benefits, it should order Fred's to provide a panel of psychiatrists. However, Fred's denied Ms. Burks' mental injury claim. She justifiably sought medical treatment on her own, and it would be unfair to require her to change providers at this stage. Accordingly, the Court holds Fred's shall provide Ms. Burks with reasonable and necessary medical treatment for her mental injury and designates Dr. Saini as the authorized physician. *See Ducros v. Metro Roofing and Metal Supply Co., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 62, at *11 (Oct. 17. 2017).

Finally, the Court turns to Ms. Burks' request for temporary total disability (TTD) benefits. After the hearing, the parties stipulated that Fred's paid $8,893.28 in TTD benefits from December 18, 2014, through July 15, 2015. Ms. Burks requested TTD from July 16, 2015, forward for her mental injury.

To establish entitlement to temporary benefits, Ms. Burks must show she (1) became disabled from working due to a work injury, (2) a causal connection between the injury and her inability to work, and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). The only medical proof regarding Ms. Burks' work status was Dr. Nadel's March 2, 2015 note restricting her from work. The Court holds Ms. Burks did not introduce sufficient evidence to show a likelihood of prevailing in her request for additional TTD at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Fred's, Inc., shall provide medical treatment for her mental injury as required by Tennessee Code Annotated section 50-6-204. Dr. Saini shall be the authorized treating physician.

2. This matter is set for a telephonic Status Hearing on **October 16, 2018, at 10:00 a.m. Central Time.** The parties must call toll-free at 855-543-5039 to participate in the hearing.

3. Unless interlocutory appeal of the expedited hearing order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED September 24, 2018.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

7

## APPENDIX

Exhibits
1. First Report of Injury
2. Wage Statement
3. Panel
4. Notice of Controversy
5. Medical records (collective)
6. Video footage of incident

Technical record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order Setting Case for Show Cause Hearing
4. Request for Expedited Hearing
5. Order Granting Additional Time Following Show Cause
6. Status Hearing Order and Order Setting Expedited Hearing
7. Joint Petition for Continuance of Expedited Hearing
8. Order Continuing Expedited Hearing
9. Order Resetting Expedited Hearing
10. Employer's Pre-Hearing Statement
11. Order Resetting Expedited Hearing and Order on Filing of Medical Records
12. Employee's Response to the Filing of Medical Records
13. Employee's witness list
14. Employee's Position Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on September 24, 2018.

| Name | Email | Service sent to: |
| --- | --- | --- |
| Skip Carnell, Employee's Attorney | X | injury@memphislaw.com |
| James H. Tucker, Jr., Employer's Attorney | X | jtucker@manierherod.com pbarron@manierherod.com |

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**